**IN THE UNITED STATES DISTRICT COURT  
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-CR-0101-006-CVE |
| ) | (13-CV-0791-CVE-TLW) |
| EDGARDO JASSO CHAVERO, ) | |
| previously named as ) | |
| Edgardo Chavero-Jasso, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

On December 12, 2013, defendant Edgardo Jasso Chavero, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 239). Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

On June 6, 2012, a grand jury returned an indictment charging defendant and others with conspiracy to distribute and to possess with intent to distribute at least 500 grams of methamphetamine, and the indictment contained a forfeiture allegation seeking the entry of a criminal forfeiture money judgment of at least $1,000,000. Dkt. # 2. Defendant made his initial appearance on June 27, 2012, and Jeffrey McGrew was appointed as defense counsel. Dkt. # 22. The government filed a motion (Dkt. # 60) seeking a ruling that the case was complex under the Speedy Trial Act, 18 U.S.C. § 3161 et al. The Court granted the motion and the jury trial was

continued to November 2012. A superseding indictment (Dkt. # 105) was returned on October 9, 2012, but no new charges were filed against defendant.

On October 30, 2012, defendant appeared for a change of plea hearing and he pled guilty to count one of the superseding indictment. Counsel for the government, Allen Litchfield, represented that he made a plea offer to defendant and that there were at least two versions of a proposed plea agreement submitted to defendant. Dkt. # 193, at 3. Defendant stated that he had received the proposed plea agreements and he agreed with the summary of the agreements provided by Litchfield. Id. at 4-5. Defendant's answers to the Court's questions made it unclear as to whether he believed he had an agreement with the government, and the Court allowed defendant to confer with his attorney to clarify whether he wished to proceed with or without a plea agreement. Id. at 8. Defendant clarified that intended to change his plea without a plea agreement. Id. at 8-10. Defendant stated that he was fully satisfied with the advice of his attorney and that he was changing his plea of his own free will. Id. at 13-14. The Court advised defendant that he would be facing a mandatory minimum sentence of 10 years and a possible maximum sentence of life imprisonment, and defendant acknowledged that he understood the consequences of his guilty plea. Id. at 15. The Court also advised defendant that it would not know until it reviewed the presentence investigation report (PSR) if defendant would be eligible for a sentence below the statutory mandatory minimum. Id. Defendant acknowledged that he had discussed with defense counsel the application of the United States Sentencing Guidelines (USSG) to his case and that he might receive a sentence that differed from any estimate provided by his attorney. Id. at 18-19. The Court explained to defendant that he would be waiving certain constitutional rights by changing his plea, and defendant stated that he wished to voluntarily waive those rights. Id. at 21-24. The Court read the indictment to

defendant and asked defendant questions about the alleged offense. Id. at 25-26. Defendant admitted that he conspired with others to distribute methamphetamine and that the conspiracy involved at least 500 grams of methamphetamine. Id. at 27-28. Defendant denied that he communicated with Paez-Perez during the time period alleged in the indictment, but he did admit to talking to "Luis" and at least one of the named co-conspirators. Id. at 29-31. Litchfield stated the drug quantity was in excess of 500 grams and it was likely in the range of four to five kilograms, and defense counsel explained that he had advised defendant that the precise quantity would not be known until the PSR was prepared. Id. at 32. The Court inquired as to whether defendant would qualify for the safety valve, and defense counsel stated that he "we're continuing to try to get that done" and that defendant had met with Litchfield two times. Id. at 33. The Court accepted defendant's guilty plea. Id. at 35.

Following the change of plea hearing, a PSR was prepared by the United States Probation Office, and the PSR conservatively estimated that defendant was responsible for between two and three kilograms of methamphetamine. This resulted in a base offense level of 34 and three points were deducted for acceptance of responsibility. Defendant had no criminal history points and, with a criminal history category of I, his advisory guideline range was 108 to 135 months. However, defendant was subject to a mandatory minimum sentence of 10 years, or 120 months, and the advisory guideline range effectively became 120 to 135 months. There was no recommendation that defendant was eligible for sentencing below the statutory mandatory minimum under USSG § 5C1.2, the safety valve provision that would have allowed the Court to sentence defendant below the statutory mandatory minimum.

The sentencing hearing was set for March 6, 2013 and defendant appeared at the hearing with McGrew. Defendant asked the Court to appoint new defense counsel because there had been a breakdown in the attorney/client relationship. Dkt. # 223. The Court granted defendant's request and appointed Stephen Knorr as substitute defense counsel, and the sentencing hearing was continued to May 15, 2013. Knorr appeared with defendant on May 15, 2013, and Knorr advised the Court that he did not object to the government's decision not to recommend application of the safety valve. Dkt. # 248, at 2-3. In particular, Knorr acknowledged that defendant had not fully cooperated with the government and that the government had no further interest in meeting with defendant. Id. at 4. Defendant stated that he was simply a "consumer" of illegal drugs and he asked what he had done to merit a ten year prison sentence. Id. at 8-9. Litchfield explained that he had met with defendant three times and Knorr asked for a fourth meeting, but defendant was "[v]ery difficult, obstinate, reticent, [and] uncooperative." Id. at 10. Defendant denied that the PSR had been read to him in Spanish, even though the interpreter present in the courtroom stated that she had read the PSR to defendant in Spanish more than 30 days before the hearing. Id. at 11-12. Counsel for both parties agreed that the hearing should be continued due to defendant's claim that the PSR had not been read to him in Spanish, but Litchfield advised the Court that he would not reconsider his position on the safety valve. Id. at 12.

The sentencing hearing was reset for June 20, 2013. The parties had no objections to the PSR but Knorr did ask the Court to impose a sentence at the low end of the advisory guideline range. Dkt. # 249, at 5. Defendant stated that he "was never a narco trafficker" and that he was a

"consumer," and he denied that he ever sold drugs.[1]  Id. at 6.  The Court sentenced defendant to the statutory mandatory minimum sentence of 120 months, and the judgment and commitment was filed on June 21, 2013.  Knorr met with defendant after the sentencing hearing, and advised defendant of his appellate rights.  Dkt. # 254-1, at 3.  An interpreter was present for the meeting.  The meeting lasted approximately one hour and 40 minutes.  Knorr advised defendant that he was not aware of any colorable issues that could be raised on appeal, but Knorr would file an appeal if defendant could identify any issues that he wanted to raise on appeal.  Id.  Knorr stated that he would likely file an Anders brief[2] if he believed that the issues had no merit.  Id.  Defendant did not identify any issues that could be the subject of an appeal, but he did complain about Knorr's services during the sentencing hearing.  Id.  Knorr handed defendant a form entitled "Acknowledgment of Right to Appeal from Conviction and/or Sentence" and had the interpreter read the form to defendant.  Id.  Defendant initially refused to sign the form but, as Knorr was leaving, defendant stated that he did not want to appeal and he signed the form acknowledging that he did not want Knorr to file a direct appeal of his conviction or sentence.  Id. at 6 (signed form).

Defendant did not file a direct appeal and his conviction become final when his time to appeal expired on July 5, 2013.  Defendant's § 2255 motion (Dkt. # 239) was filed on December 12, 2013.  Thus, his § 2255 motion was filed within one year of the date his conviction became final,

---

[1] In their affidavits, McGrew and Knorr agree that the discovery materials contain video and phone recordings establishing that defendant participated in two controlled buys with an undercover agent.  Dkt. # 254-1, at 4; Dkt. # 254-2, at 3.

[2] Under Anders v. California, 386 U.S. 738 (1967), defense counsel may request permission to withdraw on appeal by filing an Anders brief stating that he has reviewed the record and "determines that any appeal would be wholly frivolous."  See United States v. Calderon, 428 F.3d 928, 930 (10th Cir. 2005).

5

and his § 2255 motion is timely under § 2255(f)(1). The Court ordered the government to file a response to defendant's § 2255 motion. The government filed a response (Dkt. # 254) and defendant has filed a reply (Dkt. # 255).

**II.**

Defendant asserts five claims of ineffective assistance of counsel concerning the performance of McGrew and Knorr: (1) Knorr failed to file a notice of appeal in violation of defendant's timely request to appeal; (2) McGrew provided ineffective assistance of counsel by failing to ensure that defendant fully understood the consequences of a guilty plea; (3) defense counsel failed to conduct an adequate investigation into defendant's participation in the drug conspiracy; (4) defense counsel failed to argue that defendant did not conspire to distribute at least 500 grams of methamphetamine; and (5) defense counsel was ineffective for failing to seek a downward departure under the safety valve provision.[3] Defendant requests an evidentiary hearing on each of his claims. Dkt. # 239, at 44; Dkt. # 260.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a]

---

[3] Grounds three, four, and five could refer to the performance of McGrew and Knorr, and the Court will consider both McGrew and Knorr as defense counsel for these claims.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

**A.**

Defendant argues (ground one) that he directed Knorr to file a notice of appeal following the sentencing hearing, and Knorr provided per se ineffective assistance of counsel by failing to file a notice of appeal. Dkt. # 239, at 16-20. The government has obtained an affidavit from Knorr, and Knorr states that defendant expressly instructed him not to file a notice of appeal. Dkt. # 254-1, at 3. Knorr has also provided a waiver of appeal form executed by defendant. Id. at 6-7.

Defendant claims that he asked Knorr to file a notice of appeal, because defendant believed that he received a sentence in excess of what was promised in the plea agreement. Dkt. # 239, at 16. Defendant believed that he would receive a sentence between 41 and 51 months imprisonment, and

7

he intended to argue on appeal that his sentence of 120 months was excessive.[4] Id. Knorr presents a different version of the post-sentencing meeting with defendant. Knorr states that he met with defendant following the sentencing hearing, and he provided defendant a copy of the judgment and commitment and advised defendant of his appellate rights. Dkt. # 254-1, at 3. Knorr was unaware of any colorable issues for appeal, but he invited defendant to identify any issues that he wanted to appeal. Defendant did not identify any issues that could be raised on a direct appeal, and Knorr presented defendant with a form entitled "Acknowledgment of Right to Appeal from Conviction and/or Sentence." Id. The interpreter read the form to defendant in Spanish. Id. Defendant refused to sign the form and the interpreter signed the form to show that the form had been read to defendant. Id. As Knorr was leaving, defendant stated that he did not want to file a direct appeal and he signed the portion of the form showing that he did not request Knorr to file an appeal. Id. However, Knorr advised defendant that he had 14 days from the date the judgment was entered to file an appeal, and he told defendant to contact Knorr if he changed his mind about filing an appeal. Id.

The Supreme Court has clearly established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). While there is no bright-line rule requiring a defense attorney to ask the defendant if he wishes to appeal, an attorney has a duty under the Sixth Amendment to the United States Constitution to consult with his client about the

---

[4] As part of this claim, defendant states that he "accepts his guilt" and that he did not intend to file an appeal to challenge his conviction. Dkt. # 239, at 16. He also claims that Knorr was "retained" specifically to file a direct appeal, and that he "deliver[ed] his life and family assets" to Knorr. Dkt. # 255, at 13. Knorr was court-appointed counsel and defendant did not pay for Knorr's services.

possibility of an appeal if the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. This situation is an exception to the general rule that a defendant must show that his attorney's error had an adverse effect on the proceedings to prevail on a claim on ineffective assistance of counsel, because a defense attorney's failure to file an appeal results in the defendant's forfeiture of a judicial proceeding. Id. at 483. A criminal defendant is not required to show that the appeal would have had merit. Id. at 486. The Tenth Circuit has held that an attorney who disregards a defendant's request to file a notice of appeal is ineffective and this error is presumptively prejudicial. United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003). The remedy for an attorney's failure to file an appeal as requested by a defendant is granting the defendant leave to file a delayed appeal. United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005).

In many cases, the Court would be required to hold an evidentiary hearing to resolve factual disputes as to defendant's claim that he directed his attorney to file a notice of appeal, because defendant and Knorr have presented conflicting versions of the post-sentencing meeting. However, defendant executed a form indicating that he did not wish for Knorr to file a notice of appeal. See Dkt. # 254-1, at 6-7. There is undisputed evidence in the record that defendant did not direct Knorr to file a notice of appeal, and Knorr cannot be found ineffective for complying with defendant's instructions concerning his decision not to appeal. Even after defendant signed the form, Knorr told defendant that he had 14 days to file an appeal and that defendant should contact Knorr if he changed his mind. Dkt. # 254-1, at 3. Defendant did not contact Knorr after the meeting and Knorr had no reason to believe that defendant wanted to file an appeal. The Court finds that defendant

9

expressly advised Knorr that he did not with to appeal his conviction or sentence, and Knorr did not provide ineffective assistance of counsel by failing to file a notice of appeal for defendant.

**B.**

Defendant argues (ground two) that McGrew performed deficiently during the plea negotiation process, because he did not negotiate a plea agreement with the government and McGrew allegedly gave defendant inaccurate advice about the sentence he would likely receive. Dkt. # 239, at 21-28. The government responds that defendant received two proposed plea agreements, and he advised the Court that he had received the offers and intended to proceed without a plea agreement. Dkt. # 254, at 23-24. The government also notes that defendant was properly advised by the Court as to his statutory minimum mandatory sentence, and he cannot show that he received inaccurate information about the sentence he would receive. Id. at 25.

According to defendant, McGrew failed to conduct plea negotiations with the government and he did not "seek a favorable plea agreement . . . ." Dkt. # 239, at 25. Defendant also faults McGrew for failing to explain the benefits of cooperating with the government, and he believes that he could have received a reduction in his sentence if he had been encouraged to cooperate. Id. He also generally argues that McGrew failed to conduct an adequate investigation before advising defendant to change his plea, but he does not identify any specific matters that should have been investigated. Even though defendant argues that McGrew failed to seek a favorable plea agreement, he claims that McGrew misrepresented the actual plea offers made by the government and that he erroneously advised defendant as to the contents of the proposed plea agreements.[5] Id. at 28.

---

[5] Defendant states that he "signed the plea-agreement" due to a misunderstanding of the contents of the plea agreement, but the record is clear that defendant rejected the plea agreements offered by the government. Dkt. # 193, at 8-10.

At defendant's change of plea hearing, the Court inquired as to whether the government had made a plea offer to defendant, and counsel for the government, Litchfield, stated that two plea agreements had been offered to defendant. Dkt. # 193, at 3. Both plea agreements contained appellate and post-conviction waivers, a forfeiture agreement, consent to removal provisions, a no further prosecution agreement, and an agreement that the government would move for a third acceptance of responsibility point. Id. The proposed plea agreements differed as to the drug quantity and as to defendant's cooperation. Id. The Court held a lengthy colloquy with defendant about the substance of the proposed plea agreements and his desire to proceed without a plea agreement, and defendant expressly rejected both of the proposed plea agreements on the record. Id. at 4-9. The Court advised defendant that he would be facing a statutory mandatory minimum sentence of 10 years imprisonment and that the Court would not know until the sentencing hearing if defendant qualified for a sentence below mandatory minimum. Id. at 15. Defendant was also informed that the Court was not bound any sentencing estimate provided by defense counsel. Id.

McGrew states that he met with defendant several times before the change of plea hearing and he reviewed the discovery materials with defendant. Dkt. # 254-2, at 3. Defendant repeatedly denied that he had any involvement in the charged drug conspiracy, and McGrew advised defendant there were videos and phone records showing that defendant participated in two controlled buys with an undercover police officer. Id. There was also extensive evidence showing that defendant communicated with other co-conspirators. Defendant refused to identify potential witnesses that could be helpful for his defense and he would not talk about his personal or family history. Id. McGrew advised defendant that he would be sentenced to no less than 10 years imprisonment unless he was eligible for the safety valve, but McGrew did not tell defendant that the government would

11

agree to recommend a sentence of 41 to 56 months.  Id.  McGrew explained that defendant would have to meet all five requirements of the safety valve provision to receive a sentence below 10 years imprisonment, and one of these requirements was that defendant provide complete and truthful cooperation.  Id. at 5.  McGrew arranged three meetings with Litchfield and federal agents, but the agents found that defendant was not being truthful.  McGrew states that he advised defendant of the proposed plea agreements and that defendant chose to proceed without a plea agreement.  Id.

The Court finds that the record does not support defendant's allegations that he received ineffective assistance of counsel during the time leading up to his change of plea hearing, and defendant was on notice from his attorney and the Court that he would be subject to a 10 year statutory mandatory minimum sentence unless he qualified for the safety valve.  Defendant makes conflicting allegations as to his awareness of the proposed plea agreements.  However, the Court reviewed the proposed plea agreements with defendant and he affirmed that he wished to proceed without a plea agreement.  As to defendant's belief that he would receive a sentence between 41 and 56 months, the Court advised defendant that he would be subject to a 10 year mandatory minimum sentence and that his sentence could differ from any estimate provided by defense counsel.  There is ample evidence in the record that defendant did not qualify for the safety valve due to his unwillingness to provide complete and truthful cooperation, and defendant cannot fault his attorneys if he did not receive a sentence below the statutory mandatory minimum.  Even if the Court were to assume that McGrew misrepresented the applicable guideline range, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993).  Defendant has also made no specific allegations as to issues that allegedly should

been investigated by defense counsel before the change of plea hearing, and the Court rejects his claim that McGrew failed to conduct an adequate investigation before the change of plea hearing. Ground two of defendant's § 2255 motion is denied.

## C.

Defendant claims (ground three) that defense counsel was ineffective for failing to investigate his participation in the conspiracy alleged in the indictment. Dkt. # 239, at 29-36. Defendant's argument consists of references to general conspiracy law and one short paragraph highlighting his alleged minimal involvement in the conspiracy. Defendant also argues (ground four) that defense counsel was ineffective because he failed to argue that defendant did not conspire to distribute at least 500 grams of methamphetamine. The government responds that defendant admitted to his participation in the conspiracy and the drug quantity, and there was overwhelming evidence connecting defendant to the conspiracy. Dkt. # 254, at 26.

At the change of plea hearing, the Court asked defendant questions about the conspiracy charge and his involvement in the alleged conspiracy, and defendant admitted that he agreed with one or more persons to distribute methamphetamine. Dkt. # 193, at 27. Defendant spoke to other co-conspirators about obtaining methamphetamine and defendant sold methamphetamine to an undercover police officer. Id. Defendant admitted that he drove to Tulsa, Oklahoma to purchase methamphetamine and that at least some acts in furtherance of the conspiracy occurred in the Northern District of Oklahoma. Id. at 27-28. He acknowledged that the overall scope of the conspiracy involved at least 500 grams of methamphetamine. Id. at 28. Defendant knew another member of the conspiracy as "Luis," although he did not know this person's actual name. Id. at 29. Litchfield explained that phone records linked defendant to the leader of the conspiracy, Paez-Perez,

13

and Paez-Perez's drug ledgers identified defendant as Tiende. Id. at 30. Defendant made approximately 470 calls to Paez-Perez and he also made 169 phone calls to Cesar Palafox during the conspiracy. Id. at 31. Defendant admitted that he spoke to Palafox about purchasing methamphetamine. Id. at 31-32. Litchfield declined to take a firm position on the amount of drugs involved in the conspiracy, but he estimated that the drug quantity was at least four to five kilograms. Id. at 32. Defendant stated that he was voluntarily changing his plea to guilty, and the Court found that his admissions were sufficient to support a conviction. Id. at 34.

In his § 2255 motion, defendant makes a general argument that he was not a member of the charged conspiracy based on his belief that his sole act in furtherance of the conspiracy was a single sale of 98 grams of methamphetamine. Dkt. # 239, at 36, 42. However, he admitted at the change of plea hearing that the scope of the conspiracy involved at least 500 grams of methamphetamine. In a drug conspiracy case, a defendant is held responsible not only for his own conduct but also for the reasonably foreseeable conduct of other co-conspirators that is within the scope of the conspiracy. United States v. Foy, 641 F.3d 455, 469 (10th Cir. 2011). While defendant may believe that he was a minor participant in the conspiracy, he has made no specific allegations tending to show that the overall scope of the conspiracy involved less than 500 grams. The affidavits of McGrew and Knorr show that each attorney thoroughly reviewed and understood the discovery, and they went over the discovery with defendant. Dkt. # 254-1, at 4; Dkt. # 254-2, at 3. Both attorneys state that defendant was unwilling to accept the weight of the evidence against him. Id. The Court also notes that defendant makes no argument that he would have gone to trial if McGrew had conducted additional investigation before trial, and it is unclear how he could establish prejudice based on the arguments contained in grounds three and four of his § 2255 motion. The Court finds

that McGrew and Knorr had no reasonable basis to challenge defendant's involvement in the conspiracy or that the conspiracy involved at least 500 grams of methamphetamine, and grounds three and four of defendant's § 2255 motion are denied.

**D.**

Defendant's final argument (ground five) is that defense counsel failed to argue for a sentence below the statutory mandatory minimum under the safety valve provision of the USSG. Dkt. # 239, at 42. The government responds that defense counsel did seek a reduction of defendant's sentence under USSG § 5C1.2, but counsel for the government and defendant agreed that defendant did not qualify for the safety valve due to his failure to provide complete and truthful cooperation. Dkt. # 254, at 29.

Under USSG § 5C1.2, a district court may impose a sentence below a statutory mandatory minimum if five requirements are satisfied:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has

15

> no relevant or useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Complete and truthful cooperation is an essential element that must be established for a defendant to qualify for the safety valve. In this case, there was agreement among Litchfield, McGrew, and Knorr that defendant failed to cooperate with the government and that defendant was not eligible for the safety valve. McGrew arranged three meetings for defendant to present his evidence to Litchfield and federal agents, and each time defendant refused to cooperate. Knorr attempted to arrange a fourth meeting, but defendant refused to provide additional information to the government and Knorr believes that Litchfield acted in good faith by declining Knorr's request for a fourth meeting. Dkt. # 254-1, at 5. The record shows that both McGrew and Knorr advocated for a reduction of defendant's sentence under the safety valve provision, but defendant was unwilling to cooperate with the government and rendered himself ineligible for relief under the safety valve. The Court finds that defense counsel actively sought relief for defendant under the safety valve and that defendant's own conduct was responsible for the inapplicability of this provision of the USGG, and defendant's fifth ground for relief is denied.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 239) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's Motion for an Evidentiary Hearing (Dkt. # 260) is **denied**.

**DATED** this 17th day of March, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE